UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARITZA REYES,

    Plaintiff,

v.                                  Case No: 2:17-cv-2-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Maritza Reyes seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.[1]

### I. Issues on Appeal[2]

Plaintiff raises three issues[3] on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the severity of Plaintiff's left hand impairment; (2)

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 20, 21.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in her brief.

whether substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity ("RFC"); and (3) whether the vocational expert's ("VE") testimony provides substantial evidence supporting the Appeals Council's finding that there are other jobs in the national economy Plaintiff could perform.

## II. Summary of the ALJ's Decision

On July 6, 2012, Plaintiff filed applications for DIB and SSI, alleging her disability began August 1, 2011 due to schizophrenia, depression, anxiety, catastrophic thoughts, bipolar disorder, panic attacks, stress and hallucinations. Tr. 82, 106-07. Plaintiff's claims were denied initially and upon reconsideration. Tr. 142-57, 160-64. On November 14, 2012, Plaintiff requested a hearing before an ALJ. Tr. 169-70.

On June 22, 2015, ALJ Hortensia Haaversen issued a decision finding Plaintiff not disabled from August 1, 2011 to the date of the decision. Tr. 28-38. At step one, the ALJ found that Plaintiff meets the insured status requirement of the Social Security Act through December 31, 2016 and has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date. Tr. 30. Next, the ALJ found Plaintiff has severe impairments of degenerative disc disease, status post right shoulder rotator cuff repair, status post thoracic spine compression, osteoarthritis, depressive disorder and obesity. *Id.* The ALJ then concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 31. Next, the ALJ determined Plaintiff has the RFC to perform a

full range of exertional levels, with certain limitations. Tr. 32-33. The ALJ then found Plaintiff is capable of performing her past relevant work as a recycling worker. Tr. 36. Thus, the ALJ concluded Plaintiff was not disabled from August 1, 2011 to the date of the decision. Tr. 38.

On review at Plaintiff's request, the Appeals Council issued a decision on November 15, 2016 finding Plaintiff not disabled from August 1, 2011 to June 22, 2015. Tr. 1-9, 22-24. The Appeals Council adopted most of the ALJ's findings, but further reduced Plaintiff's RFC to light work[4] and determined Plaintiff could not perform any past relevant work. Tr. 4-5. The Appeals Council then found there are jobs that exist in significant numbers in the national economy Plaintiff could perform. Tr. 6.

## III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)

---

[4] The regulations define light work as work that involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[5] Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review.

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

*Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV. Discussion

    *a. Whether the ALJ properly evaluated the severity of Plaintiff's left hand impairment*[6]

The ALJ found Plaintiff has several severe impairments. Tr. 30-31. Nonetheless, the ALJ determined Plaintiff's left hand impairment is not severe, noting "[h]er left hand flexion deformity and osteoarthritic changes to the 5th digit is non-severe, as there is no evidence this causes more than minimal limitations. (Ex. 9F). There is no objective testing of her handling and grasping with the left hand that documents decreased abilities." Tr. 31. Plaintiff argues the ALJ erred by not properly considering the relevant records in making her findings. Doc. 25 at 13-14. The Commissioner responds substantial evidence supports the ALJ's findings. Doc. 26 at 14.

The Court finds the ALJ properly determined that Plaintiff's left hand impairment is not severe. In support of her argument, Plaintiff submits a chiropractor's finding that her grip was below normal. Doc. 25 at 13; Tr. 591. The Eleventh Circuit has held that "an ALJ has no duty to give significant or controlling weight to a chiropractor's views because, for [Social Security Administration] purposes, a chiropractor is not a 'medical source' who can offer medical opinions." *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 745 (11th Cir. 2012); *see also*

---

[6] In the section of her brief disputing the ALJ's RFC findings, Plaintiff challenges the ALJ's severity findings regarding her left hand impairment. Doc. 25 at 13-14.

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ's decision to discount the opinion of the claimant's treating chiropractor was supported by substantial evidence as a chiropractor is not considered an "acceptable source" and thus cannot establish the existence of an impairment and his findings were inconsistent with his own treatment notes). Thus, the chiropractor's opinion does not constitute an objective medical finding that Plaintiff's grip was below normal. Tr. 591; *see Miles*, 469 F. App'x at 745; *see also Crawford*, 363 F.3d at 1160.

Plaintiff further relies on the findings of Joseph Kandel, M.D., a physician who treated Plaintiff from October 5, 2012 to December 12, 2014 for her back and neck pain. Doc. 25 at 13; Tr. 848-906. Contrary to Plaintiff's argument, on October 5, 2012, Dr. Kandel noted Plaintiff "had left fifth finger injury, but there is no clear evidence of fracture." Tr. 903. Furthermore, as the Commissioner accurately argues, on January 14, 2013, Dr. Kandel opined Plaintiff "reached a point of plateau and maximum medical improvement from a neuro medical standpoint. She merits a 3% impairment for her cervical strain/sprain, cervical facet, cervical radiculitis. She merits a 0% impairment for her lumbar strain and mechanical back pain." Doc. 26 at 14; Tr. 895. Dr. Kandel referred Plaintiff back to her primary care physician to manage her weight and noted her future care would consist of various medications and physical activities, such as fitness, yoga and Pilates. Tr. 895.

Thus, the evidence submitted by Plaintiff does not establish the effect of her left hand impairment on her ability to work. Doc. 25 at 13-14. Accordingly, the Court finds Plaintiff's evidence does not disturb the ALJ's severity findings because

"the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Furthermore, the Court finds the ALJ properly evaluated Plaintiff's alleged impairments at step two. The Eleventh Circuit has held, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Accordingly, even if the ALJ here erred by finding that Plaintiff's left hand impairment is not severe, that was harmless because the ALJ found Plaintiff has several severe impairments, and "that finding is all that step two requires." *Id.* at 825; *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."). Thus, the Court finds the ALJ properly evaluated Plaintiff's alleged impairments at step two.

      *b. Whether substantial evidence supports the ALJ's assessment of Plaintiff's RFC*

The ALJ determined Plaintiff has the RFC to perform a full range of exertional levels, except that Plaintiff can:

> occasionally lift 20 pounds; frequently lift 10 pounds; stand or walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; frequently balance; unlimited

stooping, crouching, kneeling, and crawling; avoid concentrated exposure to extreme heat and cold; avoid even moderate exposure to hazards; can understand and recall simple instructions; can persist at simple and routine tasks for a regular workday at an appropriate pace and can sustain at this level for months; can relate adequately with others in the workplace, but would work best with limited contact with the public and under limited interpersonal demands; can adapt to most changes and task demands found in routine work settings on a sustained basis; limited to low stress jobs defined as only occasional interaction with coworkers and the public; limited to occasional changes in the work setting.

Tr. 32-33.

In support, the ALJ summarized Plaintiff's medical records related to her physical impairments:

> For her physical health, she alleges disability based on a motor vehicle accident in July 2011, and she received treatment for whiplash syndrome, thoracic sprain, lumbosacral sprain, right shoulder sprain, and left hand sprain. (Ex. 7F). Objective examination showed myospasms, tenderness, lack of motion, and weakness. (Ex. 7F). Imaging revealed mild compression fracture at three thoracic sites. (Ex. 7F). Right shoulder image showed prior rotator cuff repair. Lumbar image showed one disc bulge and one disc herniation with stenosis of neural foramina at L4-5. In addition, cervical image showed some disc bulges and herniations and mild stenosis at a few sites. All of these conditions were reimaged showing the same. (Ex. 9F). She went to rehabilitation therapy at West Coast Injury. (Ex. 6F). By December 2014, sources at Neuroscience and Spine said she has maximum medical improvement in January 2013, after pain medicines, muscle relaxers and anti-inflammatories. Dr. Kandel said, "I explained to her that I do not have much more to offer." He referred her to pain management. (Ex. 13F).

> Later in her care at Family Health Centers her initial symptoms after the accident appear resolved: musculoskeletal system normal, neurological system normal, psychiatric normal. Rather, her sources focused on obesity and low salt diets, low fat diet, and "maintain regular exercise." (Ex. 10F). There is no evidence [Plaintiff] complied with any of this. There are no diet logs, nutrition diaries, weight loss logs, or home exercises. Her body mass index remained around 39. (Ex. 11F). Despite this morbid obesity with non-compliance with weight loss, Dr. Guillermo

>noted a normal musculoskeletal exam: normal tone, strength, muscle, in all extremities. (Ex. 14F).

Tr. 35. The Appeals Council did not disturb the ALJ's RFC findings, except that it further reduced Plaintiff's RFC to light work. Tr. 5.

Plaintiff argues the ALJ and the Appeals Council erred by not properly considering Plaintiff's various impairments related to her right shoulder, left shoulder, cervical and lumbar radiculopathy and obesity. Doc. 25 at 10-15. She asserts this led to the ALJ's erroneous findings at later steps. *Id.* at 15-16. The Commissioner responds substantial evidence supports the ALJ's RFC findings. Doc. 26 at 8-15.

First, with regard to Plaintiff's right shoulder impairment, the ALJ found status post right shoulder rotator cuff repair to be a severe impairment and discussed Plaintiff's relevant medical records in her RFC findings. Tr. 30, 35. Although the ALJ acknowledged Plaintiff previously suffered a rotator cutoff in her right shoulder, the ALJ correctly discussed that Guillermo Cuna, M.D., a physician who treated Plaintiff from January 29, 2014 to December 18, 2014, consistently "noted a [generally] normal musculoskeletal exam: normal tone, strength, [and] muscle[] in all extremities." Tr. 35, 988, 992, 998, 1002, 1006, 1013, 1016. Although Plaintiff occasionally complained of back or joint pain, she repeatedly denied any muscle aches, muscle weakness, swelling in the extremities, joint contractures or joint swelling or warmth. Tr. 983, 987, 991, 997, 1001, 1005, 1009, 1013, 1016. On December 18, 2014, Dr. Cuna found Plaintiff had abnormal motor strength and

tenderness and limited range of motion in her right shoulder, which he did not note in other visits. Tr. 984.

To rebut the ALJ's findings, Plaintiff refers to other medical records showing her right shoulder abnormalities. Doc. 25 at 11-12. The Court will not re-assess conflicting evidence related to her right shoulder because "when there is credible evidence on both sides of an issue it is the Secretary, acting through the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly." *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (citing *Richardson*, 402 U.S. at 389-409). Furthermore, the evidence showing Plaintiff's right shoulder abnormalities is insufficient to disturb the ALJ's findings because "the mere existence of [] impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Although the ALJ and the Appeals Council already limited Plaintiff's RFC to occasionally lifting 20 pounds, frequently lifting 20 pounds and never climbing ladders, ropes or scaffolds, Plaintiff submits no evidence showing that her right shoulder abnormalities limit her further. Tr. 32-33; Doc. 25 at 11-12.

Next, Plaintiff argues the ALJ erred by not considering her left shoulder impairment. Doc. 25 at 12-13. Here, the Court finds the ALJ need not consider Plaintiff's left shoulder impairment because she did not identify it as a disabling impairment. *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006) ("[T]he ALJ need not scour the medical record searching for other impairments that might be

disabling, either individually or in combination, that have not been identified by the claimant."). On her initial paperwork, Plaintiff did not allege her left shoulder impairment as a disabling impairment. Tr. 82, 94, 111. During the hearing before the ALJ, when the ALJ asked what prevents Plaintiff from working, she answered pain in her neck, right shoulder and lower back and did not discuss her left shoulder at all. Tr. 50.

Next, Plaintiff questions the ALJ's assessment of her obesity. Doc. 25 at 14-15. The ALJ here found Plaintiff's obesity to be a severe impairment and discussed the relevant records in her RFC findings:

> Later in her care at Family Health Centers her initial symptoms after the accident appear resolved: musculoskeletal system normal, neurological system normal, psychiatric normal. Rather, her sources focused on obesity and low salt diets, low fat diet, and "maintain regular exercise." (Ex. 10F). There is no evidence [Plaintiff] complied with any of this. There are no diet logs, nutrition diaries, weight loss logs, or home exercises. Her body mass index remained around 39. (Ex. 11F). Despite this morbid obesity with non-compliance with weight loss, Dr. Guillermo noted a normal musculoskeletal exam: normal tone, strength, muscle, in all extremities. (Ex. 14F).

Tr. 30, 35. Plaintiff argues the ALJ's finding that Plaintiff did not comply with her physician's treatment plan is incorrect because the records show her weight loss, medication compliance and regular exercise. Doc. 25 at 14-15. The Commissioner responds Plaintiff does not show what additional limitations her obesity imposes on her RFC beyond what the ALJ found. Doc. 26 at 15.

The Court finds the ALJ properly considered Plaintiff's medical records concerning her obesity, and to the extent the ALJ erred, the error was harmless. Plaintiff began seeking treatment with Donita Dobson, D.O., on February 21, 2011

for her medication refill and foot pain. Tr. 473-74. During this visit, Plaintiff's weight was 207 pounds, and her BMI[7] was 40.4. Tr. 473. On April 12, 2011, Dr. Dobson diagnosed Plaintiff with, among other things, obesity, and prescribed various medications. Tr. 471. On February 15, 2013, Plaintiff's BMI reached 42.8, and Dr. Dobson set Plaintiff's goals to check her weight weekly, eat on a low fat diet, lose weight and regularly exercise. Tr. 652-54. Despite these goals, Plaintiff's BMI again was increased to 43.9 on August 21, 2013. Tr. 647. Based on the increase in Plaintiff's BMI and weight and the lack of evidence, the ALJ properly concluded it is not clear whether Plaintiff complied with Dr. Dobson's recommendations. Tr. 35, 645-54. The ALJ further correctly noted that despite Plaintiff's obesity, Plaintiff repeatedly did not complain of any issues related to her right or left shoulders or obesity, and Dr. Dobson's medical findings consistently were normal. Tr. 35, 450-72, 645-58.

To rebut the ALJ's findings, Plaintiff provides Dr. Cuna noted her significant weight loss and proper compliance with a dietary plan. Doc. 25 at 14-15. Plaintiff submits this evidence without explaining its effect on the ALJ's findings. *Id.* In contrast, regardless of Plaintiff's weight loss, the ALJ correctly discussed that the findings of Drs. Dobson and Cuna generally were unremarkable (Tr. 450-72, 645-58, 987-88, 991-92, 998, 1001-02, 1005-06, 1013, 1016), and Dr. Cuna repeatedly found

---

[7] Body Mass Index ("BMI") is "the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$). For adults, both men and women, the Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002).

her morbidly obese (Tr. 978, 984-85, 987, 991-92, 995, 998, 1002, 1005-06, 1009-10). Tr. 35. Accordingly, Plaintiff does not establish how her weight loss affects the ALJ's RFC findings, although she bears the burden to do so. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter*, 791 F.2d at 1547) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."); *see Moore*, 405 F.3d at 1213 n.6.

Similarly, Plaintiff relies on Dr. Kandel's diagnoses of her cervical and lumbar radiculopathy, which alone do not disturb the ALJ's findings. Doc. 25 at 15; *see Moore*, 405 F.3d at 1213 n.6. In addition, as noted, Dr. Kandel opined Plaintiff reached a point of maximum medical improvement and "merits a 3% impairment for her cervical strain/sprain, cervical facet, cervical radiculitis" and "a 0% impairment for her lumbar strain and mechanical back pain." Tr. 895. The ALJ also accurately discussed that on December 12, 2014, Dr. Kandel explained to Plaintiff that he did "not have much more to offer," and offered to refer her to pain management. Tr. 35, 853. The ALJ's discussion shows she considered Dr. Kandel's treatment notes and lack of any opinions on limitations caused by Plaintiff's cervical and lumbar radiculopathy. Tr. 35; *see Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, . . . is not a broad rejection which is not enough to enable [the Court] to conclude that the ALJ considered [Plaintiff's] medical condition as a whole.").

Lastly, Plaintiff disputes the ALJ's RFC finding that Plaintiff could "persist at simple and routine tasks for a regular workday at an appropriate pace and can sustain at this level for months." Tr. 33. The Appeals Council adopted and incorporated this finding into its decision. Tr. 6. Plaintiff argues this finding is vague because the term "for months" does not sufficiently specify for how many months Plaintiff could perform simple and routine tasks during a regular workday. Doc. 25 at 8-9. Plaintiff also asserts this RFC finding renders her not capable of performing any substantial gainful activity because she only is able to hold a job "for months." *Id.* at 9. The Commissioner responds substantial evidence supports the ALJ's RFC finding. Doc. 26 at 15-17.

Plaintiff does not provide any binding authority that the ALJ's use of the term "for months" is not permissible or is a reversible error. Doc. 25 at 8-9. Even if the ALJ's inclusion of "for months" in her RFC findings was error, it was harmless because it did not affect the ultimate determination. Tr. 6; *see Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (citing *Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983)) ("To the extent that an [ALJ] commits an error, the error is harmless if it did not affect the judge's ultimate determination."). The ALJ included this limitation, along with other RFC limitations, in her hypothetical to the VE, and the VE testified there are three jobs in the national economy Plaintiff could perform. Tr. 69-73. Accordingly, the Appeals Council found there are other jobs that exist in significant numbers in the national economy Plaintiff could perform. Tr. 6. Based on the findings above, the Court finds substantial evidence the ALJ's

RFC findings. Accordingly, the Court will not address Plaintiff's argument that the ALJ's erroneous RFC findings led to errors in her later findings because this argument is now moot. Doc. 25 at 15-16.

> c. *Whether VE's testimony provides substantial evidence supporting the Appeals Council's finding that there are other jobs in the national economy Plaintiff could perform*

Based on her RFC findings, the ALJ found Plaintiff could perform her past relevant work. Tr. 32-33, 36-37. The Appeals Council adopted most of the ALJ's RFC findings, but further reduced Plaintiff's RFC to light work. Tr. 5. The Appeals Council then determined Plaintiff could not perform her past relevant work. *Id.* Nonetheless, based on the VE's testimony, the Appeals Council found there are other jobs that exist in significant numbers in the national economy Plaintiff could perform. *Id.*

During the hearing, the ALJ asked the VE if there are any jobs in the national economy that a hypothetical person with the RFC determined by the Appeals Council could perform. Tr. 70, 72-73. The VE identified three jobs: housekeeper, price marker and small parts assembler. Tr. 73. Plaintiff argues the ALJ erred by not resolving a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Doc. 25 at 16-20. The Commissioner responds the VE's testimony is consistent with the DOT. Doc. 26 at 17-20.

The Court finds no conflicts exist between the VE's testimony and the DOT. Contrary to Plaintiff's argument, the ALJ explicitly stated the VE's testimony was consistent with the information contained in the DOT. Tr. 37. Plaintiff also "never

identified any conflicts at the hearing and never raised any conflict through questioning the VE, despite being represented by counsel." *Garskof v. Astrue*, No. 5:07-cv-288-Oc-GRJ, 2008 WL 4405050, at \*6 (M.D. Fla. Sept. 26, 2008); Tr. 74-80, 332-37, 342.

Even if there is a conflict, the Court finds the ALJ did not err by not resolving a conflict between the VE's testimony and the DOT. Tr. 69-74. If there is a conflict, the ALJ is to "obtain a reasonable explanation for the apparent conflict." SSR 00-4p, 2000 WL 1898704, at \*4 (Dec. 4, 2000). The Eleventh Circuit has held, however, that the Social Security Rulings are not binding on courts. *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 n.4 (11th Cir. 2011) (citing *B.B. v. Schweiker,* 643 F.2d 1069, 1071 (5th Cir. Unit B Apr.1981)).[8]

Instead, even if a conflict exists between the VE's testimony and the DOT, the Eleventh Circuit has found the ALJ may rely on the VE's testimony without seeking any further explanation for the conflict because "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999); *Miller*, 246 F. App'x at 662 ("Even assuming that an inconsistency existed between the testimony of the [VE] and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the [VE]. Our precedent establishes that the testimony of a [VE] 'trumps' an

---

[8] The Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v.City of Prichard, Ala.*, 661 F.2d. 1206, 1209 (11th Cir. 1981) (en banc).

inconsistent provision of the DOT in this Circuit."); *Jones*, 423 F. App'x at 939 ("The ALJ was permitted to base his findings about these three jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation."). Thus, the Court find the ALJ did not err by not resolving a conflict, if any, between the VE's testimony and the DOT.

Without consulting any further literature, the Appeals Council "may rely solely on the VE's testimony" to support its findings. *Jones*, 190 F.3d at 1230. Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the Appeals Council's finding.

### V.     Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and her determination that Plaintiff was not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 2nd day of February, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record